UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ANTONIO A. GUTIERREZ,**

               Plaintiff,

    v.

**SERGEANT NICK V. NGUYEN (Oregon
Department of Corrections (ODOC) Snake
River Correctional Institution (SRCI));
LIEUTENANT REBECCA KRUEGER
((ODOC) SRCI); J. GILLUM ((ODOC)
SRCI Correctional Officer),**

               Defendants.

Civil Case No. 2:11-1095-KI

OPINION AND ORDER ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

       Antonio A. Gutierrez
       #5448026
       SRCI
       777 Stanton Blvd.
       Ontario, OR 97914

             Pro se Plaintiff

Page 1 - OPINION AND ORDER ON SUMMARY JUDGMENT

Ellen F. Rosenblum
Attorney General
Andrew Hallman
Nina Englander
Assistant Attorneys General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

    Attorneys for Defendants

KING, Judge:

Plaintiff, an inmate at Snake River Correctional Institution ("SRCI"), brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before me are defendants' Motion for Summary Judgment and Plaintiff's Motion for Extension of Time to File a Sur-reply. For the following reasons, I grant defendants' motion and deny as moot plaintiff's motion.

## BACKGROUND

Plaintiff has been in custody since 1985. He was initially housed at SRCI until, in late December 1998, plaintiff used a "lock in a sock" on his cellmate. Plaintiff was sanctioned and criminally charged; he pleaded guilty to Attempted Assault in the Second Degree and received an additional 48-month term of imprisonment. Thereafter, he was housed at the Oregon State Penitentiary until, in 2009, he was transferred back to SRCI.

At SRCI, he alleges he had many different cellmates, some of whom were compatible, but some of whom proved to be problematic and were gang-affiliated. He considers himself to be a Causcasian Cuban. Am. Compl. ¶ 38. He contends defendant Officer J. Gillum, the assignment officer, treated him differently because of the 1998 assault by assigning Mexican or Mexican-American gang members or difficult inmates to his cell, in violation of the Equal

Page 2 - OPINION AND ORDER ON SUMMARY JUDGMENT

Protection Clause. He has been matched with Mexican or Mexican-American gang members,
but he got along well with at least one Mexican cellmate. He has also been matched with
Caucasian, non-gang-affiliated cellmates with whom he did not get along well.

On August 17, 2010, plaintiff was assaulted. Plaintiff alleges that the day before the
assault he told the officer in charge of his unit "there was a problem and that he needed to talk
with the Sergeant or Lieutenant in charge of Complex 3 that particular night as there was a
dangerous situation developing." Id. at ¶ 25. The officer said he would relay the message to a
sergeant.

Later that evening, plaintiff informed the Complex 3 Sergeant, defendant Nick Nguyen,
that he had been threatened and requested a move.[1] Plaintiff did not include in either his initial
Complaint or his Amended Complaint a specific recitation of his conversation with Sergeant
Nguyen, nor did he file a declaration in support of his opposition to defendants' motion for
summary judgment.[2] In his Amended Complaint, plaintiff alleges he told Sergeant Nguyen
"roughly" the same facts as alleged in paragraph 24 of his Amended Complaint, underscoring
"the fact [plaintiff] had been told 'to move from the Unit or he would be jumped' and that he
believed this threat to be very real[.]" Id. at ¶ 25. In paragraph 24, plaintiff alleges he had asked
his new cellmate what he was "in for." Id. at ¶ 24. A group of inmates then approached plaintiff
and told him a "prison rule" was no one asked the Paisa gang what "they were in for[.]" Id.

_____

[1]Sergeant Nguyen recalls his conversation occurring on August 17, but defendants assume
for purposes of resolving the motion that the conversation took place on August 16.

[2]The Court specifically instructed plaintiff he needed to set out facts in a declaration in
order to contradict defendants' declarations. Summ. J. Advice Notice and Scheduling Order,
Mar. 26, 2013, ECF No. 91.

Page 3 - OPINION AND ORDER ON SUMMARY JUDGMENT

Sergeant Nguyen remembers plaintiff approaching him and telling him there would be a fight if plaintiff was not moved to another unit. Sergeant Nguyen asked plaintiff for more information, but plaintiff refused to give any details and, according to Sergeant Nguyen, plaintiff did not tell the Sergeant he was being threatened by any particular inmate or inmates.

The Sergeant advised plaintiff he would discuss the threat with his Lieutenant.[3]  Plaintiff does not dispute that Sergeant Nguyen gave plaintiff the choice of providing the names of the inmates threatening him and go to administrative segregation or refuse to "cell in" and go to disciplinary segregation. The latter option, according to plaintiff, would affect his future chance of parole. Lieutenant Krueger explains, however, that inmates who choose disciplinary segregation may challenge any adverse consequences through the hearings process. Plaintiff accepted neither option.

When prison officials took no action that night to move him, plaintiff asked his unit officer what to do. The officer told him to "cell in for the night" and that "it was already pretty late and that most likely everything would be alright that night." Id. at ¶ 27. Nothing occurred that night.

The next day, plaintiff attempted to move into another cell or out of the unit, but was told by an officer that neither move was approved.[4]  Later that night, while plaintiff was in the unit's

---

[3]Plaintiff points out Sergeant Nguyen testifies he spoke with Lieutenant Rebecca Krueger about the threat and plaintiff's request to move, but plaintiff reports without citation to any evidence that Lieutenant Krueger was not in charge the night of August 16. Sergeant Nguyen also remembers the conversation occurring on August 17.

[4]This allegation in plaintiff's Amended Complaint is contrary to statements he made in internal prison communications that he "tried to solve the problem on my own, not hearing from any staff again" and that "I tried to straighten this problem and was under the impression things
(continued...)

T.V. room, plaintiff was attacked from behind. Plaintiff suffered head injuries which required

emergency medical attention. Plaintiff complains of vision loss, headaches, neck pain and sleep

deprivation.

Either before his trip to the hospital, or a few days after,[5] plaintiff spoke with Lieutenant

Rebecca Krueger, who tried to interview plaintiff about the fight. Plaintiff refused to identify the

perpetrators of the attack.

Plaintiff filed the instant action. I granted defendants' request to stay discovery, notifying

plaintiff he could submit an affidavit or declaration accompanying his summary judgment

response identifying specific information he needed in order to respond.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact

and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The

initial burden is on the moving party to point out the absence of any genuine issue of material

fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

court "must view the evidence on summary judgment in the light most favorable to the

---

[4](...continued)
were going to be alright[.]" Compl. Ex. G, at 4 (Inmate Communication Form Sept. 7, 2010),
Ex. H, at 4 (Grievance Sept. 15, 2010).

[5]Plaintiff believes he did not speak with Lieutenant Krueger until two or three days after
being placed in disciplinary segregation.

non-moving party and draw all reasonable inferences in favor of that party." Nicholson v.

Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

I.    Equal Protection Claim

I previously instructed plaintiff he may have an Equal Protection claim if he can allege

and prove defendant Officer Gillum intentionally, and without rational basis, treated plaintiff

differently from others similarly situated. See North Pacifica LLC v. City of Pacifica, 526 F.3d

478, 486 (9th Cir. 2008) (a "class of one" plaintiff must show that the discriminatory treatment

was intentionally directed at him, as opposed to being random or accidental).

Plaintiff amended his complaint, alleging Officer Gillum violated the Equal Protection

Clause by "assigning an array of unusual cellmates with Plaintiff such as to create hardship and

put Plaintiff's safety in jeopardy" and, specifically, to house him with mostly Hispanic inmates.

Am. Compl. ¶ 37. Plaintiff alleges he asked repeatedly to be housed with "more compatible

cellmates closer in age and cultural demeanor." Id.

Defendants explain SCRI uses a computer program to match cellmates. The program

considers an inmate's recent Disciplinary Reports, remaining prison sentence and age; notably,

the program does not consider race or gang-affiliation. Just as with other inmates, plaintiff's

cellmates were assigned using the program. Furthermore, a housing officer does not know who

is gang-affiliated and who is not. As a result, defendants argue, plaintiff cannot show Officer

Gillum treated plaintiff any differently than any other inmate at SCRI, or that Officer Gillum

intentionally discriminated against plaintiff.

Plaintiff does not offer any facts disputing SCRI has matched him with both Mexican or Mexican-American cellmates, as well as with Caucasian, non-gang members, nor does he dispute that he was compatible with at least one Mexican cellmate, and not with some Caucasian, non-gang-affiliated cellmates. Plaintiff does not dispute a housing officer does not know who is gang-affiliated and who is not, nor does he dispute that inmates are assigned using a computer program which does not take into account race or gang-affiliation. As a result, plaintiff has failed to bring forth evidence of differential treatment or intentional discrimination.

Plaintiff asserts he needs discovery in order to survive summary judgment, but the only discovery he identifies as relevant to this claim is evidence reflecting Officer Gillum allegedly made a last-minute cell change in 2009 to place plaintiff back in the same cell in which plaintiff assaulted his cellmate back in 1998. Officer Gillum disputes that he knew about the 1998 assault. Plaintiff contends discovery would demonstrate Officer Gillum is lying, thereby undermining the rest of the officer's testimony.[6]

Even if plaintiff had evidence demonstrating Officer Gillum is lying with respect to any last-minute cell change, such evidence would be largely irrelevant. In addition to the fact that plaintiff agrees he has been housed with some individuals he was compatible with, plaintiff has not identified any discovery he believes he could obtain to undermine Captain Mark Peterson's testimony, in his capacity as Operation Captain Inmate Housing Assignments, that cell assignments are made using a computer program which does not consider race or gang affiliation

---

[6]Plaintiff references Officer Gillum's answer to an interrogatory that no cell change ever took place, but he neglects to offer the interrogatory as an exhibit in opposition to summary judgment. Additionally, in a response to plaintiff's grievance appeal, SRCI indicated Officer Gillum was assigning bunks at that time, that records reflected he did place plaintiff in the same cell, and that it was "an extremely odd coincidence." Compl. Ex. L, at 6.

Page 7 - OPINION AND ORDER ON SUMMARY JUDGMENT

in making cell assignments. See Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (while the Equal Protection clause ensures similarly situated persons are treated alike, it does not mandate an absolute equality of results). Captain Peterson testifies further that ODOC's policy is to not document an inmate's gang affiliation in the computer system.

In short, plaintiff's general desire to be celled with someone he likes does not state a claim under the Equal Protection clause, nor does his demand for white cellmates. See, e.g., Meachum v. Fano, 427 U.S. 215, 223 (1976) (no Constitutional right to placement in a particular prison or protection from transfer); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (officials may change "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another"); Bjorlin v. Hubbard, No. CIV S-09-1793 GEB GGH P, 2010 WL 457685, at * 1 (E.D. Cal. Feb. 4, 2010) (no Equal Protection violation because inmate is not "entitled to be housed with a member of his own race"); see also Johnson v. California, 543 U.S. 499, 509 (2005) (policy of housing inmates based on race is subject to strict scrutiny).

Plaintiff has failed to identify a genuine issue of material fact to survive defendants' motion for summary judgment on his Equal Protection claim. Defendants are entitled to judgment on this claim.

II.    Eighth Amendment Failure to Protect

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners. It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal citations and quotations omitted). A

prisoner may state a section 1983 claim under the Eighth Amendment against prison authorities who act with deliberate indifference to the threat of serious harm or injury by another prisoner. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).

An Eighth Amendment claim must satisfy both an objective and subjective inquiry. Farmer, 511 U.S. at 834. The objective element focuses on whether the deprivation was "sufficiently serious." Id. In the context of a failure to prevent harm, the inmate must demonstrate he was "incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective element evaluates whether the defendant acted with a sufficiently culpable state of mind--deliberate indifference.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. If one component is not met, the court need not proceed to analyze the other. Helling v. McKinney, 509 U.S. 25, 35 (1993).

Defendants question whether plaintiff has satisfied either element. I focus on whether plaintiff has produced sufficient evidence to demonstrate defendants Sergeant Nguyen and Lieutenant Krueger "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety[.]" Farmer, 511 U.S. at 837. Here, plaintiff failed to provide any details to Sergeant Nguyen about the threat, precluding Sergeant Nguyen from effectively investigating the threat. Additionally, plaintiff did not request protective custody, nor was the threat so intimidating as to compel plaintiff to choose disciplinary segregation, and Sergeant Nguyen had not heard from any other source that plaintiff was fearful.

Page 9 - OPINION AND ORDER ON SUMMARY JUDGMENT

Furthermore, Sergeant Nguyen testifies as follows:

9. On a daily basis, inmates approach me to request cell moves. Inmates often ask to be moved on the basis that they feel at risk of harm. In my experience, these requests are often based on an inmate's personal preference to be housed elsewhere and risk of harm is used as a pretense. When an inmate approaches me and claims that he feels threatened and needs to be moved, I ask the inmate for specific information to support his request for a move. I explain to the inmate, as I explained to inmate Gutierrez, that I need specific information in order to perform a reasonable investigation of his claim.

10. The inmate must provide specific information, including the name of the other inmate involved for several reasons. It is impossible to investigate and verify a threat against an inmate if the inmate refuses to provide specific information about the threat. I cannot move an inmate out of a unit simply because the inmate tells me that there will be a fight if he is not moved. There are approximately 3000 inmates at SRCI. There is a process in place for inmates to seek moves through the assignment office. If inmate Gutierrez felt that he needed to be removed from the situation immediately, I explained to him how to do so.

11. If an inmate is willing to provide specific information explaining why he feels threatened and by who, I remove the inmate from the threat of harm and inform the lieutenant of the situation so the claim can be investigated. If inmate Gutierrez had told me that he believed that his safety was at risk and had provided me with specific information regarding why he felt at risk of harm and who was threatening him, I would have accompanied inmate Gutierrez to the lieutenant's office. The lieutenant and I would then have interviewed inmate Gutierrez to verify whether he was at risk of harm. If the investigation shows that an inmate is likely at risk of harm, the lieutenant works to transfer the inmate to another complex. If there is no bed available in another unit, the inmate is sent to administrative segregation while the lieutenant tries to locate other housing options for the inmate.

Nguyen Decl. 3-4.

Plaintiff contends in his opposition that he told Sergeant Nguyen "he was being

threaten[ed] because he had asked his newly appointed cellmate what his crime of conviction

was, that he had been approached by a 'group' of inmates and that these inmates told him 'no one

asked them why they were in for[,]' that plaintiff had tried to defuse the situation without result

and had finally been told 'to move' or he 'was going to be jumped.'" Pl.'s Resp. Summ. J. 4-5.

This kind of information–particularly a reference to a cellmate–is closer to the kind of

information that could be subject to investigation. Plaintiff, however, provides no documentation

or evidence in support of this allegation, and he was advised in the summary judgment advice

notice that he must set out specific facts in a declaration to contradict facts contained in

defendants' declarations.

Because plaintiff is proceeding *pro se*, the court investigated his claim about the content

of the conversation to the extent it could. The allegations in his Amended Complaint are

unspecific; plaintiff alleges he told Sergeant Nguyen "roughly" what is contained in

paragraph 24, but the word "roughly" suggests plaintiff did not disclose everything contained in

that paragraph to Sergeant Nguyen. Additionally, the level of specificity in his opposition brief

regarding the content of the conversation is contrary to plaintiff's earlier summaries of the

conversation in his inmate communications, which occurred closer in time to the events at issue.

In a Grievance Appeal he wrote,

> In August I did request a move from the cell and unit I was in the day before the
> assault. At that time I explained to the Sergeant who talked to me the reasons I
> was asking to move. Basically I had been told to move or I would get "jumped."
> I told this to the Sergeant and some other things. What I did not tell him was who
> had made the threats. That is when I told him I did not want a "target" painted on
> my back. The way I see it I reported a serious threat, that came to materialize, to
> you and you failed to act on it.

Krueger Decl. Ex. H, at 2; see also Compl. Ex. G, at 4 ("people got upset of me over something

insignificant") (Inmate Communication Form Sept. 7, 2010); Compl. Ex. H, at 5 (plaintiff told

the sergeant there was a "problem evolving" and unless he was moved it going to result in a

Page 11 - OPINION AND ORDER ON SUMMARY JUDGMENT

physical confrontation; he feared for his personal safety; he suffered from a medical condition that affected his ability to heal).

Finally, plaintiff asserts he need not offer names, relying on Heilman v. Coursey, 3:11-cv-00594-KI, 2012 WL 1014981 (D. Or. Mar. 23, 2012). In that case, however, the plaintiff inmate testified in his declaration he had repeatedly identified the perpetrators to the housing officer over the course of several months, and his visits to the assignment office were corroborated by mental health notes. 2012 WL 1014981, at *5; see also Heilman v. Coursey, 2013 WL 486659, at *3 (D. Or. Feb. 6, 2013). While there may be circumstances in which a plaintiff may maintain a claim under the Eighth Amendment even when he has not identified the threatening inmate to the defendant officers, there must be factors from which a jury could conclude the officer was "aware of an obvious substantial risk to inmate safety[.]" See Farmer, 511 U.S. at 843.

Here, neither Sergeant Nguyen nor Lieutenant Krueger had information from any other source besides plaintiff that he feared harm. Indeed, plaintiff is a six foot tall man, with a murder conviction, and is not the kind of inmate who generally is vulnerable to attack. Peterson Decl. ¶ 4. Plaintiff never asked for protective custody and refused to resort to administrative segregation, suggesting he himself did not perceive the threat as overwhelmingly dangerous. Finally, plaintiff's report to Sergeant Nguyen that he was afraid for his safety, that he had been told to move from his unit or he would be jumped, and that he believed the threat was real, without any further detail about the genesis of his fear, is insufficient to survive summary judgment. My conclusion is further buttressed by the reasons SCRI gives for requiring details from an inmate before granting a move request. In short, plaintiff's evidence is insufficient to show either Sergeant Nguyen or Lieutenant Krueger was aware of any fact to lead either of them

Page 12 - OPINION AND ORDER ON SUMMARY JUDGMENT

to infer a substantial risk of harm to plaintiff. See Mickens v. Stafford Creek Correc. Ctr., 132 F.

App'x 691, 692-93 (9th Cir. 2005) (plaintiff expressed a general fear of assault, never named

inmates he feared, and did not request protective custody).

Plaintiff has failed to identify a genuine issue of material fact to survive defendants'

motion for summary judgment on his Eighth Amendment claim. Defendants are entitled to

judgment on this claim.

III.     Additional Discovery Plaintiff Believes Would Defeat Summary Judgment

Plaintiff represents that the following discovery would aid him in opposing summary

judgment. I disagree, for the following reasons:

1) Subpoena served on SRCI Security Manager J. Miller:

a) 1998 investigation of assaults resulting in Incentive Moves program and

evidence that defendants are retaliating against him because of his involvement in

getting such a program instituted

I have repeatedly held that the 1998 incident, and any incentive move program

implemented soon thereafter, are not relevant to any pending claims. See Order to Proceed in

Forma Pauperis and to Dismiss in Part 5, ECF No. 9 (Oct. 13, 2011) (dismissing retaliation

claim); Op. and Order on Discovery Mots. 2-3, ECF No. 96 (Apr. 4, 2013) (precluding discovery

related to retaliation claim).

b) Hearing's officer's findings on Aug. 17, 2010 assault

The document is attached to Lieutenant Krueger's declaration as Exhibit G. Further,

whether plaintiff was attacked from behind is not relevant to the claims plaintiff raises in this

lawsuit.

Page 13 - OPINION AND ORDER ON SUMMARY JUDGMENT

c)     The number of assaults occurring at SRCI from 2009 through 2012

Plaintiff's claims are whether Officer Gillum violated his rights under the Equal Protection Clause and whether Sergeant Nguyen and Lieutenant Krueger violated his Eighth Amendment rights by failing to protect him. Given my findings above, the number of incidents involving other inmates would not change the outcome of the motion.

2) Plaintiff seeks to depose Lieutenant Krueger by written interrogatory, but he does not identify what information he seeks to obtain from her, nor does he indicate in his opposition what information he would need to defeat summary judgment. What is clear is that Sergeant Nguyen spoke to Lieutenant Krueger at some point; she would only have learned of the threats through him. Since I have concluded Sergeant Nguyen was not deliberately indifferent to plaintiff's safety, plaintiff could not obtain any discovery from Lieutenant Krueger to change the outcome of the motion.

3) Plaintiff wishes to depose the officer in charge on the night of August 16, 2010 when plaintiff asked to be moved. Plaintiff does not indicate what information the unit officer would know that has not already been disclosed and that would change the outcome of defendants' motion.

4) Plaintiff wishes to depose by written interrogatory the officer in charge the night of August 17, 2010, who wrote the disciplinary report following the attack on plaintiff. Plaintiff does not identify what additional information he believes he would learn that would be relevant to opposing defendants' summary judgment motion.

5) Finally, plaintiff seeks information regarding receiving and release procedures, as well as medical procedures, but he does not specify what he needs to know in order to oppose this motion.

In short, none of the discovery plaintiff claims to need is relevant to surviving summary judgment.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [84] is GRANTED. Plaintiff's Motion for Extension of Time to File a Sur-reply [107] is DENIED.

IT IS SO ORDERED.

DATED this _____8¹⁴_____ day of August, 2013.


_____
Garr M. King
United States District Judge